Robertson, J.
The defendant relies, for his defense, upon the want of a possessory title in the plaintiff at the time of bringing this action; to sustain which he urged several grounds as follows :
1. That the deed from the Manhattan Company did not convey the land to the middle of Grove and Bleecker streets, to Oakley.
*107 2. That Dill, under whom Harrison, the defendant’s lessor, acquired title, derived title to the premises in question by the conveyance to him of the adjoining lots, upon the foreclosure of the mortgage to Gilbert’s executors.
3. That Bobertson acquired title to the premises in question by the conveyance to him from Oakley.
4. That the receipt of the sum of fifteen hundred dollars by Oakley, from the Corporation of Hew York, pursuant to the award of the commissioners, in the proceedings for closing this part of Grove street, estopped him from objecting to the vesting of the title of the premises in question in such Corporation by such proceedings.
5. That if the title to the premises in question had not been in the Corporation of Hew York previous to the proceedings for closing Grove street, and the title to the part closed was not vested in them by virtue thereof, no valid proceedings were ever taken to close such street; it still remains a public highway, and the plaintiff has no right , to recover possession thereof.
The map referred to in the conveyance from the Manhattan Company to Oakley, was not in evidence, and, therefore, it is impossible to fix the position and dimensions of the two pieces of land bounding the premises then conveyed, on the east and south. The boundaries on the •west and north are said to be two streets, and, by well-settled authority, this includes to the middle thereof. Ho extrinsic evidence of facts, from which the meaning of the words “four lots,” which form part of the description, could be inferred, was given. The dimensions given, it would seem, ought to control the meaning of the word “street,’ previously used, since any intimation on the face of an instrument, of an intention to confine it to the side of the street, has been held to govern such meaning. (Jones v. Cowman, 2 Sandf., 234.) But the case of Hammond v. McLachlan, decided in this Court, (1 Sandf., 323,) seems to rest solely on the ground, that a boundary by a street is one by the middle of it, and that dimensions must yield to such a boundary, being a natural object; and must be *108 rejected, although both might be construed together so as to give a piece of land entirely different from that contended for. A piece of land ninety feet long and seventy-five feet wide, bounded by the middle lines of two streets, where they approach to intersect each other, is entirely different from one of the same dimensions, bounded by ■ the sidelines of such streets, where they approach to intersect each other. If that case is authority for the doctrine which I have supposed to be sustained by it, Mr. Oakley acquired title by the deed from the Manhattan Company, to the land in Grove street, in front of the premises then taken possession of by him.
It is quite clear Dill derived no title to the premises in question from the master’s deed to him; one piece of land cannot pass as appurtenant to another, and the description in the conveyance to him of the land conveyed excluded such premises. It also seems equally plain that the deed to Robertson excluded them, as the description therein bounded the land conveyed to him by the “late line of Grove street;” of the meaning of which there can be no doubt, as the proceedings for closing part of it had only recently been confirmed, and the land so conveyed was the same premises as had been conveyed to Oakley by the Manhattan Company, although it did not comprise the whole. If there was any conflict between the two, the latter description ought rather to be rejected.
This brings the defects in the plaintiff’s title to the fourth ground of objection, to wit: that his grantor had parted with all his right to the premises in question, by accepting the sum awarded to him in the report, by whose confirmation, Grove street was partially closed, and the premises in question relieved of the right of the way of the public and transferred to the Corporation. Without examining to whom the fee of such land might have belonged originally, I shall adopt the ordinary presumption that it was in the possessors of the adjoining soil, notwithstanding there is no evidence that the Manhattan Company, under whose deed Charles Oakley went into *109 possession of the land adjoining that in controversy, ever owned any land there, and, although, probably, the map referred to in such deed would show that it had all been once the property of William W. Gilbert; for mere possession of adjacent land, not ripening into a title, has not been held to destroy a title subsisting to the soil of an adjoining highway, and the actual possession of Oakley of the premises in question had not lasted twenty years when he was dispossessed by Harrison.
The first report of the commissioners in the Grove street improvement vested the title to the land in controversy in the Corporation of the City, on paying a certain sum to the unknown owners thereof: The name “Charles Oakley,” in such report, is placed in the margin thereof, opposite the description of certain premises adjoining those in question, which they assess for benefit by such improvements. Certain sums, also placed in the margin, and certain numbers, such as 51, are placed under such description. The object of such name, and the reference of such number, are not therein explained; and the owners of such lands are therein alleged to have a right of way over the premises in question. Their second report corrects the first by altering the amounts set opposite such description of premises for benefit, using the numbers and name to designate them: It then allows Charles Oakley $1,500, which it declares to be, “ instead of assessments set forth in such first report for widening Grove street.” Upon every just principle of construction, the last declaration must be rejected as unmeaning and surplusage: There are no assessments in the original report against the lots designated as No. 51, or which have the name of Charles Oakley written opposite to them, merely for widening Grove street. In the next place, the Commissioners had just corrected the assesments for benefit from the whole improvement upon all the pieces of land designated as “ Nos. 51, &c.,” “ Charles Oakley;” and it is not to be inferred they meant, without saying so, forthwith to change them again from assessments for benefit into awards for damages. Moreover, *110 having declared in their first report that the owners of the adjoining lots had a private right of way over the land in question, which must remain as away of necessity, although the character of a public highway might be taken away from it by the proceedings in question, the Commissioners would hardly have awarded to the owner the damages in question, simply because the public would be prevented from using the land closed, as a street. The number 51 must, for the same reasons, be considered as unmeaning, and be rejected, and the award remain and be construed simply as one to Charles Oakley, of which the purpose and consideration must be otherwise inferred. Mr. Oakley received the amount as one for opening Grove street, because he so designated it in his order; but he evidently referred to the whole improvement. There does not appear expressly on the face of either report anything for which Mr. Oakley was to receive this sum. All the lands .decided to be affected by benefit or damage from such improvement, in the opinion of the commissioners, are separately described, and different amounts charged therein or awarded therefor; yet it cannot be doubted that such sum was awarded, paid and received, not as a gratuity, but for some damage done to Mr. Oakley by the improvement and the proceedings necessary to make it. All other lands in which he appears, by such report, to have been interested, are assessed for benefit; of course it was not for damage to .them. I think, from the face of the papers and extrinsic facts properly admissible in evidence, it will fully appear for what such award was made and received. The assessments for benefit by both reports were only sufficient to satisfy awards for damages to the owners of pieces of land specifically described therein as injured by the proposed improvement, as well as .the expenses of the proceedings. There were, therefore, no means provided thereby for paying the award in question; the corporation were not liable to pay it, because it was not declared to be for damage to any specified piece of land, or produced by any part or the whole of the proposed improvement, for the *111 statute did not make them responsible for sums awarded» except for damage to some property, specifically pointed out, caused by such improvement. Mr. Oakley had no means, therefore, of compelling the payment of such money as an award for damages. On the other hand, it was declared by the first report, that the corporation should pay a certain sum for having vested in them the title to the land in question, Avith certain other adjoining lands. If the title to the land in question, then, was really vested in Mir. Oakley, both the corporation and himself discovered that he was one of the unknown owners. The commissioners allowed him fifteen hundred dollars for something; it could not be inferred to be for damages to the value of that land itself, by merely taking away the right of the public to use it, and confining its use to the adjoining owners only, which would be the result of the contemplated improvement; it could, therefore, only have been for the taking away and his relinquishment of his interest in the land in question. A judgment by such proceedings, vesting lands not required for a public improvement in the City Corporation, is not entirely null and void, as though they had never been taken, but only voidable at the election of the parties injured, who may waive their rights. For such waiver it is not held to be necessary that there should be a formal agreement entered into between the corporation and the parties owning the lands, or a subsequent formal conveyance of the lands. The proceedings are effectual to take the case out of the Statute of Frauds, (Baker v. Braman, 6 Hill, 47 ; Embury v. Conner, 3 Comst., 511,) and the receipt of the money operates as an estoppel in pais against a claim of title. The statute is simply to be construed as having the words, “ Avith the consent of the owner,” inserted. (Embury v. Conner, ubi supra.) The procuring and mode of obtaining that consent is to be governed by general rules of law respecting any other consents. If the sum awarded to Oakley had been declared to be for damage by the improvement, it would have been payable from the funds raised from the parties *112 assessed, and they could have objected to it. (Matter of 39th street, 1 Hill, 191.) If he had objected to the report for taking away his land without his consent, the whole report would have been defeated. (Matter of John and Cherry streets, 19 Wend., 569.) As, therefore, the corporation could not use such funds for the purpose, the money paid to Oakley must have come from some other source, and been paid for some other reason than merely for damages produced by the improvement. As, therefore, on the one hand, the only fund out of which the corporation could pay such award was the amount to be paid by them for vesting the title in them, and they were not bound to pay it, except on receiving a waiver of any objection to the decree of title in them; and as, on the other, Oakley could not enforce its payment, and the only consideration he could be held to have given for it was a waiver of his objections, and if he did not receive it on that account, he would be liable to pay it back; and as he received it under such proceedings, at that time owning the title, it is fair to presume that he received it for such waiver; besides which, as he never offered to pay it back, nor applied, as one of the unknown owners, for his share of the money awarded to extinguish his title, but stood by and saw the improvement carried into effect, and received the award, after inclosing the land, but subsequently abandoned its possession to a grantee of the corporation, who paid $3,100 therefor, and allowed him to improve it without notifying him of his claim, he must be held to have estopped himself from setting it up. Indeed, taking the doctrine laid down by Justice Jewett, in Embury v. Conner, in connection with that advanced in the case of John and Oherry streets, the order of confirmation did not preclude Oakley from objecting to the effect of the proceedings ; and they were so entire that an improper appropriation of land to the Corporation rendered the whole report erroneous. The only conclusion to be arrived at, is, that the whole proceedings were liable to be avoided until the owners consented to the appropriation, because that objec *113 tion could be taken at any time. If this be so, the acceptance of any benefit under the proceedings, by the owners whose land is taken, should equally estop them.
There is also another serious question which may interfere with the plaintiff’s right of recovery, to wit, that the vesting in the corporation of the land shut out from Grove street by the proceeding in qxiestion, and the payment by them of the sum assessed for benefit to it, may have qualified such closing, so that it would be void unless such title vested. Clearly no act of the legislature gives the Corporation of the City of Hew York the power to shut up a street, either with or without the aid of a court, unless proper proceedings have been taken, and in those proceedings the commissioners have given their views of the amount of benefit and damage, if any, to all lands affected by such improvement, or stated their inability to find any so affected either way. If the surrender to the corporation of the title to the land appropriated by the closing, was a condition thereof, and such condition was dependent on the will of the owners, and no consent was ever given by them, the proceeding would be ineffectual, and the land still a public highway. If so, no recovery could be had of its possession by the plaintiff in this case. But it is tinnecessary to examine this point further, as I prefer to place this case upon the ground already assigned, of an estoppel by the plaintiff, or waiver of objection to the appropriation of the land in question to the corporation of the city.
The verdict must be sustained, and the judgment affirmed, with costs.
Hoffman, J.
It is, to my mind, quite clear that the commissioners awarded $1,500 to Oakley, as the damages to lot Ho. 51, by reason of that lot being cut off as a corner lot, and by reason of the title being vested in the corporation to so much of the strip as adjoined Ho. 51. There is no conceivable reason for such an allowance but this. The widening of Grove street consisted of the closing *114 up the strip on the southerly side, and taking in a larger one on the northerly side. His order in favor of Roome on the Comptroller is for the award for opening Grove street. That consisted in taking away the strip in question on the southerly side, and taking into the street the larger strip on the northerly side. The ease, then, is, I think, plainly within the doctrine of Embury v. Conner, (3 Comst., 511,) and the other cases cited. The ground has been taken by the corporation, with Oakley’s consent. The receipt, coupled with the report, is a sufficient manifestation of such consent, and an adoption of the machinery of the statute for effectuating the transfer. (See also Bartow v. Draper, 5 Duer, 131.)
This is all that is necessary to decide the case. I cannot avoid repeating my own increasing convictions, that if the subject is fully reviewed in the court of last resort, the act of 1818 will not be found unconstitutional, and the doctrine of revester upon closing ancient streets in Hew York will be found erroneous; that the corporation will be legally declared the absolute owners in trust of such streets, as well as those under the act of 1807; and the owners of. adjoining lands must be content to receive compensation through commissioners, for any disadvantage to their property, from lots with a frontage on a street being changed into inner ground, for the extinguishment of that easement or privilege. It must be as lawful for the legislature to allow, by closing streets, the extinguishment of an easement, as to allow land to be taken for opening streets; and I cannot but think that the idea of property remaining- in the streets of Hew York, in owners, through whose land they have been opened, is not sound, and will not be supported. I may add, that it will be found that the assumed rule rests upon extremely slight authority.
The judgment should be affirmed.
Bosworth, Ch. J.,
dissented, on the grounds, that there is not sufficient evidence that the $1,500 awarded to Oak *115 ley for damages was awarded for divesting his title to the premises in question, and making compensation therefor, or, if there is, that Oakley received the $1,500 with knowledge that it was awarded and paid for that purpose and with that intent.
Judgment affirmed.